(Not for publication) (Docket Entry No. 45)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

_____ :
:
KYONG H. KIM and CANS & :
BOTTLES, INC. d/b/a CAROOL'S :
LIQUORS, :
:
        Plaintiffs, : Civil No. 06-3604 (RBK/JS)
:
        v. : **OPINION**
:
HAE YEON BAIK, individually, :
LAW OFFICE OF HAE YEON BAIK, :
:
        Defendants. :
_____ :

**KUGLER**, United States District Judge:

    Presently before the Court is an amended motion for summary judgment filed by Defendants Hae Yeon Baik ("Baik") and the Law Office of Hae Yeon Baik (collectively, "Defendants"). For the reasons set forth below, Defendants' motion will be granted.

**I. BACKGROUND**

    As the parties are by now familiar with the factual background underlying this case, and because the factual background has been recited in the Court's Opinion on Defendants' motion to dismiss, this Opinion will contain only a brief recitation of relevant facts. Plaintiff Kyong H. Kim, ("Kim"), acting as President of Cans & Bottles, Inc., d/b/a Carool's Liquors (collectively, "Plaintiffs"), retained Defendants in June 2001 to negotiate the sale of Carool's to a third party, Tina Tran. Baik met with Kim in Philadelphia, usually either at a restaurant or at Baik's office.

1

Defendants negotiated the sale on Plaintiffs' behalf, and prepared the relevant contracts, including the Agreement of Sale ("Agreement"). In consideration for Baik's services, Plaintiffs promised to pay Baik a "reasonable legal fee" for the time Baik spent on this transaction.

Plaintiffs allege that the Agreement did not "address many issues," which led to the breach of the Agreement. On June 7, 2006, Plaintiffs filed a Complaint in Superior Court of New Jersey, Law Division, Camden County. In the Complaint, Plaintiffs allege professional negligence by Defendant Baik. On August 7, 2006, Defendants removed this action to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. §§ 1332, 1446(a). In an Opinion and Order dated February 17, 2007, this Court dismissed Plaintiffs' claims except for Count I, alleging professional negligence, and Count II, alleging breach of fiduciary duty.

## II.     LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the non-moving party." Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her]favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at 331 (1986) (Brennan, J., dissenting)). The moving party may satisfy this burden by either

(1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 2007 WL 2709661 at *1 (3d Cir. Sept. 17, 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2003)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. ANALYSIS

Defendants seek summary judgment on the two remaining counts in the Complaint, contending that both are barred by Pennsylvania statutes of limitations. Plaintiffs have not

opposed the instant motion.

A District Court, hearing a diversity case, must "apply the law of the forum state, including its choice of law provisions." Woessner v. Air Liquide Inc., 242 F.3d 469, 472 (3d Cir. 2001) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Robertson v. Central Jersey Bank & Trust Co., 47 F.3d 1268, 1273 (3d Cir. 1995)). Because this Court is located in New Jersey, New Jersey's choice of law rules apply.

New Jersey courts rejected the "lex loci delicti ('place of the wrong') rule for determining the choice of law based on the place where the tort occurred." Id. (citing Veazey v. Doremus, 510 A.2d 1187, 1189 (N.J. 1986)). New Jersey courts use "'the more flexible governmental interest analysis in choice-of-law decisions.'" Id. (quoting Veazey, 510 A.2d at 1189). In addition, "New Jersey's choice of law test proceeds on 'an issue-by-issue basis.'" Id. (citing Veazey, 510 A.2d at 1189). "'Conflicts principles do not dictate that all legal issues presented by a single case should be decided under the laws of a single state. The evaluation of significant relationships and governmental interests takes place issue by issue and can lead to the application of different bodies of law.'" Id. (quoting Johnson Matthey Inc. v. Pennsylvania Mfrs. Ass'n Ins. Co., 593 A.2d 367, 374 (N.J. Super. Ct. App. Div. 1991)).

New Jersey's governmental interest analysis requires a two-step inquiry. Id. 'The first step in the analysis is to determine whether a conflict exists between the law of the interested states. . . . If an actual conflict exists, the next step is to identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties.'" Id. (citing Veazey, 510 A.2d at 1189). If no conflict exists, the court should apply the law of the forum state. RTC Mortg. Trust 1994 N-1 v. Fidelity Nat.

4

Title Ins. Co., 58 F. Supp. 2d 503, 529 (D.N.J. 1999).

    A.    **Count One- Professional Negligence**

The first step in a government interest analysis is whether there is an actual conflict between Pennsylvania and New Jersey law on a professional negligence claim.  Under Pennsylvania law, legal malpractice claims alleged as professional negligence are subject to a two-year statute of statute of limitations.  Wachovia Bank v. Ferretti, 935 A.2d 565, 571 (Pa. Super. Ct. 2007).  Further, in Pennsylvania, "the statute of limitations in a legal malpractice claim begins to run when the attorney breaches his or her duty."  Wachovia, 935 A.2d at 573.  In New Jersey, a six-year statute of limitations of applies to legal malpractice actions.  N.J. Stat. Ann. 2A:14-1; McGrogan v. Till, 771 A.2d 1187, 1189 (N.J. 2001).  A New Jersey "legal malpractice action accrues when an attorney's breach of professional duty proximately causes a plaintiff's damages."  Grunwald v. Bronkesh, 621 A.2d 459, 463 (N.J. 1993).

Because there is a conflict between the Pennsylvania and New Jersey law statutes of limitations for legal malpractice claims, this Court must move to the second prong of the governmental interest test, identifying the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties.  "If a state's contacts are not related to the policies underlying its law, then that state does not possess an interest in having its law apply."  D'Agostino v. Johnson & Johnson, 628 A.2d 305, 309 (N.J. 1993).  "Consequently, the qualitative, not the quantitative, nature of a state's contacts ultimately determines whether its law should apply."  Id.

The bulk of the activity in this case relevant to Plaintiffs' underlying claim of professional negligence occurred in Pennsylvania.  Defendant Baik is an attorney licensed to practice in

5

Pennsylvania, and Plaintiffs do not dispute the contention that Defendant Baik was not a member of the New Jersey bar.  Pennsylvania, as this Court previously noted in its Opinion on the prior motion to dismiss, has a significant interest in regulating the members of its legal bar.  The legal work about which Plaintiffs complain was largely performed in Pennsylvania, and the parties met to discuss the underlying transaction at issue here in various locations in Pennsylvania, including at Baik's law office.  As the Court previously noted, although Plaintiffs allege that Baik committed the unauthorized practice of law in New Jersey, Pennsylvania has an overriding interest in regulating the conduct of its lawyers.  Accordingly, the Court finds that Pennsylvania has more contacts with the parties and underlying transaction at issue in this matter, and that Pennsylvania has a greater policy interest than New Jersey in this litigation.[1]

Plaintiffs allege that Defendants' professional negligence was grounded in a failure to prepare a proper Agreement of Sale, unlawful practice of law in New Jersey, and failure to conform and carry out the Agreement according to Plaintiffs' requests.  All of these breaches are alleged to have occurred in June 2001.  Because Pennsylvania law applies, and Plaintiffs did not file their Complaint in this matter until June 2006, the applicable statute of limitations bars Plaintiffs' claim of professional negligence, and the Court will grant Defendants' motion for summary judgment on Count I of the Complaint.

### B. Count Two - Breach of Fiduciary Duty

Again, the first step in a government interest analysis is whether there is an actual conflict between Pennsylvania and New Jersey law on a claim of breach of fiduciary duty.  Pennsylvania

---

[1] The Court's findings in this regard do not diminish the New Jersey's interest in regulating and preventing the unauthorized practice of law in the state.

law provides that "a claim for breach of fiduciary duty is subject to a two-year statute of limitations." Koken v. Colonial Assur. Co., 885 A.2d 1078, 1093 (Pa. Commw. Ct. 2005) (citing 42 Pa. Cons. Stat. Ann. § 5524(7)). "The statute begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." Aquilino v. Philadelphia Catholic Archdiocese, 884 A.2d 1269, 1275 (Pa. Super. Ct. 2005) (citations omitted). New Jersey, however, subjects such claims to a six-year statute of limitations, and claims accrue when a breach of a duty proximately causes damage. Dynasty Building Corp. v. Ackerman, 870 A.2d 629, 633 (N.J. Super. Ct. App. Div. 2005).

Because there is a conflict between Pennsylvania and New Jersey law regarding the applicable statutes of limitations, this Court must again move to the second prong of the governmental interest test, identifying the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties. The same conduct forms the bases of Plaintiffs' legal malpractice and breach of fiduciary duty claims, so the Court employs the same analysis here. Pennsylvania's greater contacts with the parties and underlying transaction at issue in this matter and Pennsylvania's greater policy interest in this litigation lead the Court to the same conclusion, that Pennsylvania law applies. As above, the underlying events occurred in June 2001 while the Complaint was not filed until June 2006. Accordingly, the claim for breach of fiduciary duty is time-barred, and the Court will grant Defendants' motion for summary judgment on Count II of the Complaint

## IV.  CONCLUSION

Based upon the foregoing, the motion for summary judgment is GRANTED as to both

Counts in favor of the Defendants and against Plaintiffs.  An accompanying Order shall issue today.


Dated:     7-21-09                                                          /s/ Robert B. Kugler        
                                                                                        ROBERT B. KUGLER
                                                                                        United States District Judge